VIRGILIA MINING CORPORATION, A CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8053.  Promulgated July 23, 1946.

*Theodore H. Roche, Esq.*, for the petitioner.
*W. J. McFarland, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of
$7,047.31 in income tax for 1941.  The only issue is whether he erred
in not allowing a deduction for depletion based upon cost in comput-
ing a net loss carry-over from 1940.  The facts have been stipulated.

The petitioner is a California corporation which filed its income
tax return for 1941 with the collector of internal revenue for the first
district of California.  It was engaged in mining gold at all times
material hereto.

Its first income tax return was one filed for 1935, in which it elected
to claim depletion upon the percentage of income method.  It con-
cedes that it was bound by that election through 1940.  It sustained a
net operating loss of $32,639.57 for 1940, exclusive of any deduction
for depletion.

The petitioner's deduction for depletion for 1940 under sections
23 (m) and 114 (b) (4) was zero, since it is provided that the per-
centage depletion "shall not exceed 50 per centum of the net income
of the taxpayer (computed without allowance for depletion) from the
property" and the petitioner did not have any net income from its
property, but instead had a net loss for 1940.  This is not disputed.
It contends, however, that section 122 (d) (1) allows it a depletion
deduction based upon cost for the purpose of computing its net
operating loss carry-over for that year.  It is stipulated that a deduc-
tion for depletion for 1940 based upon cost would be $16,654.58.  The
petitioner claimed a deduction in that amount in computing a net
operating loss for 1940 for the purpose of a carry-over to 1941.  The
Commissioner held that no amount was deductible for that purpose.

Section 23 (s) allows a net operating loss deduction as computed
under section 122.  Section 122 is entitled "Net Operating Loss De-
duction."  "Net operating loss" is defined in subsection (a) as "the
excess of the deductions allowed by this chapter over the gross income.
with the exceptions and limitations provided in subsection (d)."
The deduction for depletion allowed under sections 23 (m) and 114
(b) (4) is one "of the deductions allowed in this chapter," Chapter

I—Income Tax. "Net operating loss carry-over" is defined in subsection (b) of section 122 as the net operating loss for the first preceding taxable year and other items not here material. The amount of the net operating loss deduction is the amount of the net operating loss carry-over reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds the normal net income (computed without such deduction). The only difference between the parties is as to the effect of subsection (d) (1) in computing the petitioner's net operating loss for 1940.

Section 122 (d) (1) provides that "the exceptions and limitations referred to in" subsection (a) shall be:

(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114 (b) (2), (3) or (4).

The purpose behind this provision was "to prevent net losses from being used as a deduction by the taxpayer where he is not suffering any economic loss by reason of the fact that his income contains nontaxable items (as in the case of percentage depletion * * *)." "The exceptions and limitations provided in section 122 (d) are for the purpose of insuring that only an economic loss will be taken into account." Report of the Committee on Ways and Means on the Revenue Bill of 1939, H. Rept. No. 855, 76th Cong., 1st sess. (1939–2 C. B. 504, 517.) Congress had in mind that percentage depletion can return more than cost and thus a part of the income may become nontaxable by reason of this deduction. A net loss, in such a case, may not represent any real economic loss.

The purpose of (d) (1) is, thus, not to grant any deduction for depletion where none is otherwise granted, but is to limit, in certain cases, the deduction otherwise allowable under other provisions of the code. It is a limitation, not a granting provision. Its effect, in the case of a taxpayer using percentage depletion, is to limit any deduction allowed under 114 (b) (4) so that it "shall not exceed" an amount computed upon the basis of cost, i. e., one not based upon discovery value or percentage of income. If a taxpayer which had elected to use the percentage method of computing its deductions for depletion were entitled to deduct some amount for 1940 under 114 (b) (4), that amount could be deducted in computing its net operating loss for 1940, provided it did not exceed an amount based upon cost. If it did exceed a deduction based upon cost, then only so much as did not exceed a deduction based upon cost could be deducted in computing its net operating loss for the purpose of the carry-over. See Regulations 103, sec. 19.122–2. An example consistent herewith is given in the regulations and also in the report of the Committee on

Ways and Means cited above. Congress has used words which clearly carry out its intention.

The deduction otherwise allowable (under 114 (b) (4)) in the case of this petitioner is zero and the limitation of 122 (d) (1), of course, has no practical effect. But 122 (d) (1) does not grant a deduction based upon cost where, as here, the taxpayer's deduction under 114 (b) (4) is zero. The petitioner loses, since its whole contention is that 122 (d) (1) in and of itself grants and allows a deduction based upon cost even where, as here, no beneficial deduction stems from 114 (b) (4).

The petitioner's argument in its brief is not well directed and almost completely misses the real question in the case. Its principal target is a letter of January 25, 1944, which is not in evidence and is not before us in any other proper way. Such a letter is not relied upon by the Commissioner or even mentioned in his argument. The petitioner also argues that every taxpayer engaged in mining is entitled to some deduction for depletion. This argument is unsound. Taxpayers who elect to use the percentage method of computing deductions for depletion must take the disadvantages resulting from the use of that method along with the great advantages derived therefrom. It happens in this case, under that method, that the net income limitation deprives the petitioner of the benefit of any actual deduction for 1940. This is no disadvantage in the computation of net income, because where there is no net income there is no need for the deduction. Congress intended that a net loss carry-over should not be increased by any deduction under such circumstances. The petitioner has not advanced any sound argument on the real issue in this case.

*Decision will be entered for the respondent.*